Argued September 19, reversed October 19, petition for rehearing
denied November 22, 1972, petition for review
denied January 4, 1973

HILDERBRAND ET AL, *Respondents, v.* MILLER
ET AL (No. 5195), *Appellants.*

501 P2d 1316

*Wayne C. Annala,* Hood River, argued the cause for appellants. With him on the briefs were Annala & Lockwood, Hood River.

*Roger L. Dick,* The Dalles, argued the cause for respondents. On the brief were Dick & Dick, The Dalles.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

This appeal is from an order of the circuit court dated December 29, 1971 in a declaratory judgment

suit commenced in 1962 involving the estate of Lois B. Miller, deceased.

Mrs. Miller died in 1959, naming as the principal heirs in her will John O. and Gordon W. Hilderbrand, sons by a previous marriage, and Willis H. Miller, her husband. Her principal gift to Miller was a life estate of her interest in property known as Butte Orchards in Hood River County, with the remainder to her sons. Miller made a claim that deceased's interest therein was limited to a value of $30,000, and he owned all the rest. The Hilderbrands contended that an undivided one-half interest in Butte Orchards, not just a $30,000 interest therein, belonged to the deceased. Miller was made executor of the estate by the will. He took possession of the estate properties. The dispute over ownership of this and other properties led to the filing of the declaratory judgment suit in 1962. Miller stepped aside as executor and the United States National Bank of Oregon became administrator, with the will annexed, in 1962.

In 1967 the circuit court made its decree which decided ownership of the properties in dispute. Among such properties, that the decree declared were the deceased's and presently to be estate property, was an undivided one-half interest in Butte Orchards. The other one-half interest in Butte Orchards was and is owned by Miller, and he operates the orchards. With reference to this and other properties the 1967 decree provided in paragraph 5:

"That the defendants [Miller] shall account for all moneys, rents, property, income, profits and payments from * * * and for the value of the use of, the real and personal property hereinbefore described [including Butte Orchards] which was the property of the deceased * * * and is the prop-

erty of the plaintiffs * * * and which is a part of the estate * * *. Such accounting may include any claim, credit or offset claimed by Willis H. Miller in regard thereto. * * * The said accountings shall be in complete form in accordance with usual accounting practices * * * and upon said accountings being made, the Court shall make its further declaratory judgment and determine what further proceedings and hearings are required on account thereof, and the Court shall make its further declaratory judgment and determine the amount of money, property, rents, income, profits and payments and the value of the use of said property and the just portion thereof which shall be paid and delivered over to the proper parties and decree other appropriate relief * * *."

The decree made no specific determination or mention of the order in which the devised property would be subject to payment of estate expenses.

The motion from which the order emanated which prompted the instant appeal was one of several motions made at the same time in 1971. It sought to require Miller to pay into the estate all of the income from the one-half interest in Butte Orchards which the decree of 1967 held was owned by the estate from the time of decedent's death. After hearing, the court made its order upon such motion in which it ruled

"* * * that the defendant Willis H. Miller pay to the United States National Bank of Oregon, Administrator * * * all of the income which he has received from the undivided one-half of said Butte Orchard property owned by the decedent at the date of her death, together with interest * * * to be used by the said Administrator with the Will Annexed on a pro rata basis with other estate income in paying and settling outstanding claims and obligations of the estate as provided by law."

Claims and obligations of the estate, including expenses of administration and attorney fees, are substantial. From the record before us, it appears that they probably will aggregate around $92,000. It appears from the same record that the administrator will have possession of property, not including the Butte Orchards property or income, or Sherman County wheat land or its income which had been devised in trust to Hilderbrands, with a total value of about the same amount.

In appealing from the 1971 order Miller essentially contends that the gift of a life estate in the one-half interest of the Butte Orchards was in lieu of curtesy and is entitled to priority over all other gifts in regard to debts, cost of administration and gifts to other beneficiaries as long as such other assets remain available. Concomitant with this contention is Miller's proposition that by his actions he elected to take under the will and not by right of curtesy.

Hilderbrands contend that the decree of 1967 determined the questions involved and that when Miller did not appeal therefrom such determination became res judicata. They also contend that a subsequent order filed on June 4, 1970 by the court made the issues raised on this appeal by Miller res judicata. In connection with these points Hilderbrands moved to dismiss this appeal and we reserved ruling on the motion because the same question is raised by the claim of res judicata in the briefs. Hilderbrands also contend that defendant is equitably estopped from making his present claims because of his alleged inconsistent position taken over a period of several years; that the defendant is not in court with clean hands; and that he is too late to claim now that he should not be re-

quired to account for income from the Butte Orchards property on the grounds that he took that property as a gift in lieu of curtesy.

The will in question, among other things, provides in paragraph III (including the codicil thereto):

"All the remainder and residue of my wearing apparel, jewelry and other articles of personal adornment, household goods and other contents of our home, I direct to be divided so that the items which my husband, WILLIS H. MILLER, and his family have given to me, I give and bequeath to my husband, WILLIS H. MILLER, and those items which I had prior to my marriage * * * are to go as the residue of my estate * * *."

We have mentioned that the will devised wheat lands in Sherman County to Hilderbrands in trust. This is done in paragraph IV. Paragraphs V and VI provided:

"V

"I devise all the remainder of the real property or any real property which I may have an interest owned by me at my death first to my husband, WILLIS H. MILLER, for life, and with the remainder over to go as the residue of my estate. [This is the wording of the will which devised the life estate in the Butte Orchards property.]

"VI

"All the rest, residue and remainder of my estate of whatsoever nature and wheresoever situate, I give and bequeath to my sons, JOHN O. HILDERBRAND and GORDON W. HILDERBRAND * * *."

The order appealed from had two effective provisions. It ordered Miller to pay the income from his wife's share of the Butte Orchards property to the administrator. It also ordered that that income would be subject to a pro rata share of estate expenses.

The Oregon Probate Code was revised in 1969, but under the provisions of the new law the old law shall apply to all aspects of this case. ORS 111.015(1), (4). Former ORS 116.105 reads:

"The executor or administrator is entitled to the possession and control of the property of the deceased, both real and personal, and to receive the rents and profits thereof until the administration is completed or the same is surrendered to the heirs or devisees by order of the court or judge thereof * * * *"

■ However, the heir under the will acquires the title to the real property at the death of the testator subject to the right of the administrator to take possession for the purpose of paying the debts of the estate. *In Re Witherill's Estate,* 178 Or 253, 166 P2d 129 (1946); *D'Arcy v. Snell,* 162 Or 351, 91 P2d 537 (1939); *De Bow v. Wollenberg,* 52 Or 404, 96 P 536, 97 P 717 (1908). Though the administrator is entitled to possession, *Re Estate of McDermid,* 109 Or 633, 222 P 295 (1924), it appears that the court below ordered Miller to pay the income to the administrator because it thought that the income was subject to a pro rata share of estate expenses. Thus, the question of possession of the Butte Orchards income is dependent on the question of whether that income is subject to a pro rata share of estate expenses. The answer to the latter question relates to whether there are enough other assets possessed by the administrator to pay all the claims of the estate. Former ORS 117.330 provided:

"The property, real and personal, given by the will to any devisee or legatee is liable for the payment of the funeral charges, expenses of administration and claims against the estate, and if there is more than one such devisee or legatee, then in proportion to the value or amount of the several

devises or legacies; except that specific devises and legacies shall be exempt from such liability, if such appears to have been the intention of the testator, and there is other sufficient property to satisfy such charges, expenses and claims."

Under this statute the gifts passing through the residuum clause of a will are the first to be subject to estate expenses absent any intent by the testator expressed on the subject in the will. *Grimes v. Grimes,* 242 Or 158, 408 P2d 731 (1965); *cf.* 24 Op Atty Gen 18, 19 (Or 1948-50).

■ The will of Mrs. Miller expresses no intent as to which property is to be used to pay the expenses of the estate. Paragraph VI of the will is a residuum clause and the property passing through this clause is subject to the debts of the estate. *Grimes v. Grimes,* supra. Until this property is exhausted none of the other property passing under the will is subject to the expenses of the estate.

■ Former ORS 113.020 (2) provided that the laws of Oregon in regard to dower shall be applicable to curtesy as well. Therefore, the rules of law governing gifts in lieu of dower should be applied to gifts in lieu of curtesy. A gift to a widow in a will is presumed to be in lieu of dower and if the widow takes under the will she is barred from also claiming her right to dower. *U.S. National Bank v. Daniels,* 180 Or 356, 177 P2d 246 (1947); *Grimes v. Grimes,* supra. Miller did not elect to take his statutory right to curtesy within the time allowed (former ORS 113.040, 113.020(2)); therefore, we agree with his proposition that by his action in accepting the gift to him of a life estate in the Butte Orchards property he took the same in lieu of his curtesy rights.

Gifts in lieu of dower are given priority over all other gifts under a will. They are not subject to payment of estate expenses until all other property passing under the will is exhausted. *Grimes v. Grimes,* supra. *In re Shepherd's Estate,* 152 Or 15, 41 P2d 444, 49 P2d 448 (1935), is not inconsistent with this holding since there the court found that the gift in lieu of dower was the residuum clause, and the expenses of the estate were to be paid before the remainder was to go to the wife in lieu of her dower.

■ Miller's gift being in lieu of curtesy is entitled to the same priority as a gift in lieu of dower. The income from the Butte Orchards property is therefore not to be subject to payment of estate expenses until all other assets of the estate are exhausted. We must decide whether either the decree or the order renders res judicata the question whether the Butte Orchards income is subject to a pro rata share of estate expenses.

■ This litigation began as a dispute over what property passed under the will of Lois B. Miller. The decree of December 1967 settled that dispute and ordered that Miller should account for the income he received from property that was to pass under the will. The parties to this dispute disagree as to whether the decree ordered that Miller pay the income he had the duty to account for to the administrator with the will annexed. We do not reach a decision on this question as the administrator is entitled to possess the estate assets if needed. We have concluded that all of the other estate assets must be exhausted before the Butte Orchards income will be needed to pay the estate expenses. In June of 1970 the court below refused to reconsider its order that Miller account for (and possibly pay over) the income from the Butte Orchards

property. The question of payment of estate expenses was not before the court either in 1967 or in 1970. This was a declaratory judgment suit to determine ownership of property; payment of estate expenses was not relevant to the issue of ownership. We cannot hold that the question of whether the Butte Orchards income is subject to a pro rata share of estate expenses was decided or should have been litigated in the previous proceedings in this case. Therefore, the previous decree of December 1967 and the order of June 4, 1970 do not make the issue of estate expenses res judicata, nor bar this appeal.

■ The plaintiffs have argued that Mr. Miller is equitably estopped from asserting that the gift to him is in lieu of curtesy and has priority over the other gifts under the will because his past behavior in claiming that certain items of property passed to him directly on his wife's death and not under the will is inconsistent with his present position. It is true that Miller made claims to property to which he was not entitled, and altered one piece of evidence to further one such claim. However, at no time in the past did Miller question the validity of the will or that his wife's interest in Butte Orchards was to pass to him for his lifetime under the terms of the will. He simply contested the extent of his wife's interest in Butte Orchards. Hilderbrands did not change their position in reliance upon Miller's claims or actions.

We find no inconsistency between Miller's present position and his previous contentions, and he is not estopped from asserting that his gift takes priority over the other gifts under the will in regards to the payment of estate expenses.

The plaintiffs also argue that Miller's past con-

duct in claiming assets of the estate as his own is inequitable conduct and gives him "unclean hands" in this dispute. As a part of this argument plaintiffs point to what they claim was his removal as executor in 1962 for misconduct. The order effecting the removal specifically disavowed any implication that the court found wrongdoing. Later, in this proceeding, the court noted its doubts about Miller's reliability because of his attempt to mislead the court with altered evidence. However, this argument is based on the same set of facts as the equitable estoppel argument above, and we deem it insufficient for the defeat of Miller's claim. Miller's present claim is not inconsistent with his past behavior, and that behavior can have no effect upon the property rights given him under the will and by the applicable probate law.

■ Miller's present claim that his gift takes priority as being in lieu of curtesy is based on his election to take under the will. This election took place when Miller did not file a claim to take his curtesy interest in his wife's estate within one year of his wife's death. Former ORS 113.040, 113.020(2). (*Cf. U.S. National Bank v. Daniels,* supra.) This being the case the plaintiffs' argument that it is too late for Miller to claim his gift takes priority as being in lieu of curtesy is also without merit.

The gift of a life estate in the Butte Orchards property owned by the deceased is in lieu of curtesy and not subject to the expenses of the estate until all other estate assets are exhausted. Consequently, the second effective provision of the order appealed from must be reversed.

Inasmuch as the assets of the remainder of the estate appear to be ample to pay the estate expenses,

it would be idle to require the accounting, although such might become necessary if present apparent probabilities in that regard should not eventually occur.

Reversed.